**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: June 16 2010**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-34934 |
| | ) | |
| Patrick L. Burns and Sandra I. Burns, | ) | Chapter 7 |
| | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO AVOID LIEN

This case is before the court on Debtors' motion ("Motion") [Doc. # 166] to avoid a judicial lien held by Genoa Banking Company ("Genoa") on their residential real property pursuant to 11 U.S.C. § 522(f) and Genoa's objection [Doc. # 169]. The court held a hearing on the Motion that Debtors, their counsel, and counsel for Genoa attended in person.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. The Motion is a core proceeding that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(K) and (O).

The parties have submitted the Motion for determination on the following facts to which they have stipulated. Genoa holds a judicial lien on Debtors' residential real estate that is based on deficiency judgments obtained in connection with the foreclosure of mortgages on three parcels of commercial real estate. The value of Debtors' residential real estate is $233,800. The balance owed the holder of the first

mortgage on Debtors' homestead property exceeds the value of the property. The balance owed by Debtors on the debt secured by Genoa's lien is $147,407.05 plus interest from October 1, 2009. The real estate taxes on Debtors' homestead property have been paid and are not delinquent. Debtors claim a homestead exemption under Ohio Revised Code § 2329.66(A)(1)(b) in the total amount of $10,000. [Doc. # 1, Schedule C].

Because the court finds that Genoa's deficiency judgment lien is a judicial lien avoidable under § 522(f), and for the reasons that follow, Debtors' Motion will be granted.

## LAW AND ANALYSIS

The Bankruptcy Code establishes grounds for avoiding certain judicial liens that impair an exemption to which a debtor is entitled. Specifically, § 522(f) provides as follows:

> (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
>
>> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
>> . . . .
>
> (2) (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
>
>> (i) the lien;
>> (ii) all other liens on the property; and
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
>> (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.
>>
>> (C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f)(1) and (2).

Genoa does not dispute that the $10,000 homestead exemption claimed by Debtors is an exemption

2

"to which [they] would have been entitled" under § 522(b)[1] and that the mathematical calculation of impairment required by § 522(f)(2) otherwise supports avoidance as requested by Debtors. At issue, however, is the meaning of "[t]his paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure" found in § 522(f)(2)(C). Neither the Sixth Circuit Court of Appeals nor the Sixth Circuit Bankruptcy Appellate Panel have interpreted § 522)(f)(2)(C). Two lines of cases from other jurisdictions reach conflicting interpretations of the meaning of § 522(f)(2)(C). Citing *In re Criscuolo*, 386 B.R. 389 (Bankr. D. Conn. 2008), Genoa argues that § 522(f)(2)(C) prohibits the avoidance of its judicial lien since it is based on a deficiency judgment obtained in connection with the foreclosure of three mortgages on other non-residential properties owned by Debtors. Debtors, on the other hand, cite *Banknorth, N.A. v. Hart (In re Hart)*, 328 F.3d 45 (1st Cir. 2003), in support of their position that § 522(f)(2)(C) does not apply to Genoa's judicial lien.

      The starting point for applying the Bankruptcy Code is always the existing statutory text, with the court's function to enforce the statute according to its terms unless the disposition required by its terms is absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). In determining whether the statutory language is clear, the court must take a holistic approach. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because the same terminology is used elsewhere in a context that makes its meaning clear...." *Id.* When the statute's language is not clear, courts may resort to legislative history to ascertain its meaning. *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001).

      In *Hart,* the First Circuit Court of Appeals closely examined the structure of § 522(f) and the placement of § 522(f)(2)(C) within that structure in finding the terms used in § 522(f)(2)(C) "sufficiently clear" for it to conclude that Congress did not intend § 522(f)(2)(C) as an exception to otherwise avoidable liens. *Hart*, 328 F.3d at 48. The court noted that Congress uses "this subsection" in § 522(f)(2)(A) to refer to all of § 522(f) and uses "this paragraph" in § 522(f)(2)(C) to refer to § 522(f)(2) only. *Id.* at 48-49. The court also noted the different terminology used in § 522(f). Congress used the term "judgment" only in § 522(f)(2)(C), and used the term "lien" or "judgment lien," throughout the other subparagraphs. *Id.* at 49. The court found that examination of the statute as a whole provided evidence of Congress's intent:

---

[1] The applicable exemption law under § 522(b)(3)(A) is, in this case, Ohio law. Debtors filed their bankruptcy petition on November 13, 2007. Under Ohio law at that time, a debtor was entitled to a homestead exemption in the amount of $5,000. Ohio Rev. Code § 2329.66(A)(1)(b) (2007). Thus, Debtors have jointly claimed a homestead exemption in the total amount of $10,000.

3

> Congress used § 522(f)(2)(C) to contrast mortgage foreclosure judgments from liens which are avoidable under § 522(f), clarifying that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien which may be avoided. Mortgage foreclosure judgments do not become judicial liens subject to avoidance under § 522. "Rather, a deficiency judgment-whether it arises in a foreclosure action as in Maine or in a separate action as in Massachusetts-is a non-consensual judicial lien like any other which is subject to avoidance under § 522(f)." *In re Linane*, 291 B.R. 457, 461 (N.D. Ill. 2003).

*Id.* The court found that its interpretation "provides a logical and coherent reading of Congress' organization of § 522." *Id.* The court stated that "if Congress intended to except mortgage foreclosure judgments, then § 522(f)(1) was the natural and trouble-free place to insert such an exception" and if Congress intended to exclude deficiency judgment liens, "it would have used the word 'lien'" rather than "judgment." *Id.*

> Finding the *Hart* analysis persuasive, one court opined:
>
> [T]he obvious purpose behind § 522(f)(2)(C) is to prohibit debtors from avoiding judgments entered during judicial foreclosure proceedings, but before the actual foreclosure sale, and thereby avoid the mortgage-debt as established by the judgment to the extent of the debtor's homestead exemption. If judgments of foreclosure and similar decrees could be avoided, then in states allowing large homestead exemptions[,] a substantial portion, if not all of the mortgage-debt could be avoided leaving the happy chapter 7 debtor with not only a financial fresh start after discharge, but also with a greatly reduced or totally avoided home mortgage. Such would be an absurd result and clearly not one intended by Congress.

*In re Phillips*, No. 09-42937-JJR-7, 2010 WL 816150, *3, 2010 Bankr. LEXIS 710, *8-9 (Bankr. N.D. Ala. Mar. 5, 2010).

Other courts have focused on the nature of a mortgage deficiency judgment in finding that such a judgment is not a "judgment arising out of a mortgage foreclosure." In *In re Smith*, 270 B.R. 557 (Bankr. W.D.N.Y. 2001), the court explained that "[a]t common law, foreclosure was an equitable suit distinct from any action to recover money due on the underlying bond or note." *Id.* at 560. When a mortgagee pursued foreclosure as its initial remedy, it would then commence a separate action at law to recover any deficiency. *Id.* To remedy this duplication of pleading, New York amended its foreclosure procedures to permit a mortgagee to move for entry of a deficiency judgment simultaneously with filing a motion for an order confirming the sale if done within certain time constraints. *Id.* at 560-61. The court explained, however, that "'[a]n action to foreclose a mortgage is not an action to recover the mortgage debt from the mortgagor personally, but to collect it out of the land by enforcing the lien of the mortgage'" and that "the equitable relief of foreclosure continues to be distinguishable from a deficiency judgment, with its origin as an action at law." *Id.* at 561 (citation omitted). Finding that § 522(f)(2)(C) does not exclude deficiency judgments

from avoidance, the court further explained as follows:

> This court must presume that Congress was particular in its selection of words for section 522(f)(2) of the Bankruptcy Code. Notably, part (C) of that paragraph excludes its application to "a judgment arising out of a mortgage foreclosure", but not necessarily to all judgments arising out of mortgage foreclosure proceedings. A judgment of foreclosure and sale arises out of a foreclosure, as an equitable suit, and it is the judgment of foreclosure and sale to which subdivision 522(f)(2)(C) makes reference. In contrast, a deficiency judgment is a legal remedy which, by statute, is allowed as a relief that is incidental to the foreclosure. Being otherwise distinct at common law from the foreclosure process, a deficiency judgment arises from rights of legal origin and not from a foreclosure in equity.

*Id.*

Similarly, *In re Linane*, 291 B.R. 457 (Bankr. N.D. Ill. 2003), the court found that "mortgage deficiency judgments are sufficiently distinct from mortgage foreclosure proceedings to be outside the purview of Section 522(f)(2)(C)." *Id.* at 460. The court explained that while a deficiency judgment is related to a foreclosure proceeding in that the foreclosure sale establishes the amount of the deficiency, under Illinois law, it is distinct from and complementary to the foreclosure and arises out of the underlying obligation, not out of a mortgage foreclosure as required by § 522(f)(2)(C). The court indicated that its analysis could end at this point but went on to consider the analysis of the First Circuit Bankruptcy Appellate Panel in *In re Hart*, 282 B.R. 70 (B.A.P. 1st Cir. 2002), which was later affirmed by the First Circuit, and a Connecticut bankruptcy court decision, *In re Carson*, 274 B.R. 577 (Bankr. D. Conn. 2002). It agreed with the First Circuit Bankruptcy Appellate Panel's analysis that § 522(f)(2)(C) was added "to clarify that mortgage foreclosure *judgments*, which involve the sale and eventual transfer of a property's title to a third party, are not, and do not become, judicial liens subject to avoidance under Section 522." *In re Linane*, 291 B.R. at 461 (citing *In re Hart*, 282 B.R. at 77) (emphasis in original). It also agreed with the bankruptcy court's analysis in *In re Carson* that, given the objective of § 522(f) to offer debtors a remedy to protect exempt property, "Congress could not have intended to grant greater rights to holders of judgment liens from mortgage foreclosures on non-exempt property than other holders of judgment liens on the exempted property." *Id.* at 462 (citing *In re Carson*, 274 B.R. at 579-80).

By contrast, in *In re Criscuolo*, a case relied upon by Genoa, a Connecticut bankruptcy court refused to allow the debtor to avoid a mortgage deficiency judgment. *In re Criscuolo*, 386 B.R. 389 (Bankr. D. Conn. 2008). The court reaffirmed its earlier decision in *In re Vincent*, 260 B.R. 617 (Bankr. D. Conn. 2000), which predated *Hart*. *In re Criscuolo*, 386 B.R. at 393. In its earlier decision, the court found that § 522(f)(2)(C) provided an exception from lien avoidance for mortgage deficiency judgment liens. It reasoned that the words "judgment arising out of a mortgage foreclosure" found in that subparagraph more

5

naturally suggested the mechanics of a Connecticut deficiency judgment, which is "part and parcel of a mortgage foreclosure action," than a concern regarding the conversion of a consensual mortgage into a judicial lien as argued by the debtor. *In re Vincent*, 260 B.R. at 621-22. However, in light of the fact that courts, including a Connecticut bankruptcy court, had reached contrary conclusions, the court in *In re Criscuolo* provided additional analysis.

The court found that the plain meaning of § 522(f)(2)C) is not clear on its face and, therefore, that it is necessary to determine Congressional intent through supplementary means. *In re Criscuolo,* 386 B.R. at 393. Noting the lack of any probative legislative history to assist the court in divining such intent, the court looked to "the broader fabric of bankruptcy legislation for evidence of rational Congressional purpose." *Id.* at 392. In doing so, the court considered two potential legislative purposes that it found had emerged in the course of litigation. One such purpose, which it referred to as the "Mortgage Transmutation Purpose" is the clarification purpose found in *Hart,* that is, a judgment of foreclosure does not transmute an otherwise unavoidable mortgage into a judicial lien that may be avoided. A second potential purpose, referred to by the court as the "Flow of Capital Purpose," is that § 522(f)(2)(C) is "a component of a Congressional scheme of favorable statutory treatment for mortgagees so as to encourage and sustain a flow of affordable capital into the real estate lending market." *Id.* at 394-95. The court rejected the Mortgage Transmutation Purpose, stating that Congress has never publicly expressed a concern about mortgage transmutation. Citing cases discussing the legislative history of § 1322(b)(2),[2] the court found that "the Flow of Capital Purpose is a public policy concern that Congress has articulated and honored in other Bankruptcy Code contexts." *Id.* at 395 (citing *Nobelman v. Am. Sav. Bank (In re Nobelman)*, 508 U.S. 324, 332 (1993) (Stevens, J., concurring and citing with approval § 1322 legislative history analysis in *Grubbs v. Houston First Am. Sav. Assoc.*, 730 F.2d 236, 245-46 (5th Cir. 1984)). Finding this the "most likely" Congressional purpose, the court found that § 522(f)(2)(C) serves that purpose by providing mortgagees with immunity from mortgage deficiency lien avoidance. *Id.*

This court does not find the reasoning in *In re Criscuolo* and *In re Vincent* persuasive. It believes that the Flow of Capital Purpose relied upon in *In re Criscuolo* overstates the legislative purpose of §1322(b)(2) on which the court based its reliance. The § 1322(b)(2) legislative history analysis in *Grubbs* makes clear that Congress intended to provide favorable treatment to creditors holding a claim secured only by a security interest in real property that is the debtor's principal residence. *See Grubbs*, 730 F.2d at 246

---

[2] Section 1322(b)(2) prohibits a debtor's Chapter 13 plan from modifying the rights of holders of secured claims that are secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b).

6

(stating that "the Senate receded from its position that no 'modification' was to be permitted of *any* mortgage secured by real estate" (emphasis in original)). The court explained that the limited loan modification bar found in § 1322(b)(2) was in response to "suggestions advanced in the legislative hearings . . . that home mortgagor lenders, performing a valuable social service through their loans, needed special protection against modification thereof." *Id.; see Nobelman,* 508 U.S. at 332 (citing *Grubbs* and stating that the legislative history indicates "that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market"). The legislative history relied upon in *In re Criscuolo*, therefore, does not support an interpretation of § 522(f)(2)(C) that grants greater protection to holders of judgment liens from mortgage foreclosures on nonexempt property, i.e. property that is not the debtor's residence, than to other judgment lienholders. And to the extent that the holding in *Criscuolo* is based on the fact that a Connecticut deficiency judgment is "part and parcel" of a mortgage foreclosure action, the court did not discuss the distinctive legal origin of a deficiency judgment as compared to the equitable origin of foreclosure, a distinction that this court finds significant.

This court is instead persuaded by the analysis in both *Hart* and those cases that distinguish the equitable relief of foreclosure from a deficiency judgment. This distinction is recognized under Ohio law such that "[t]he right to judgment on a note evidencing the debt secured by a mortgage and the right to foreclose on the mortgage constitute two separate causes of action, one legal and one equitable." *Metropolitan Life Ins. v. Triskett Ill., Inc.*, 97 Ohio App. 3d 228, 234 (1994). "One exhausts the mortgage security, the other affords a personal remedy. . . ." *Gevedon v. Hotopp*, No. 20673, 2005 WL 2107959, *3, 2005 Ohio App. LEXIS 4151, *9 (Ohio App. Sept. 2, 2005). The court agrees that this distinction removes a deficiency judgment lien from the purview of § 522(f)(2)(C) as it is a complimentary remedy that arises out of the underlying obligation, not out of a mortgage foreclosure. *See also In re Been*, 153 F.3d 1034 (9th Cir. 1998)(a lien based on a real estate mortgage deficiency judgment is not a "judgment arising out of a mortgage foreclosure").

With this distinction in mind, the court finds the *Hart* analysis and interpretation that much more compelling. The court finds persuasive the *Hart* court's analysis based on the structure of § 522(f) and Congress's particular selection of words, specifically, "judgment" in § 522(f)(2)(C) and "lien" throughout the rest of the subsection. The terms "judicial lien" and "lien" are defined in the Bankruptcy Code. 11 U.S.C. § 101(36), (37). "Judgment" is not a defined term. While this court cannot pretend to discern any particular insight illuminating the present issue from the definitions themselves, it nevertheless seems more likely that Congress took care in using the word "judgment" instead of terms it had otherwise defined. And the *Hart* analysis is persuasive to the court in its exploration of the import of use of the "judgment" in §

7

522(f)(2)(C) instead of the terms "lien" and "judicial lien." The court's conclusion in *Hart* that § 522(f)(2)(C) is a clarification that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien that may be avoided is consistent with the treatment elsewhere in the Bankruptcy Code of claims secured by a mortgage on real estate, *see, e.g.,* 11 U.S.C. § 1322(b)(2), and is faithful to Congressional intent in enacting § 522(f) in the first place, which was to provide debtors in a Chapter 7 proceeding with a fresh start and preserve their entitlement to the exemptions provided by § 522. *See Simonson v. First Bank of Greater Pittston (In re Simonson)*, 758 F.2d 103, 107 (3rd Cir. 1985) (Becker, J., dissenting); *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1257 (11th Cir. 2000); H.R. Rep. No. 95-595, at 126-27 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6087-88.

For the foregoing reasons, the court finds that Genoa's judicial lien is not excepted from avoidance under § 522(f). Because the judicial lien impairs Debtors' homestead exemption as contemplated in § 522(f), Debtors' Motion will be granted and Genoa's lien will be avoided. A separate order in accordance with this Memorandum of Decision will be entered.

8

07-34934-maw    Doc 188    FILED 06/16/10    ENTERED 06/16/10 16:06:37    Page 8 of 8